**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**XAC, LLC, formerly known as Amici LLC,**
**XEROX CORPORATION, and iDEAL**
**APPLICATIONS, LLC,**

                              Plaintiffs,

              v.                                        1:07-CV-135[1]
                                                         (FJS/RFT)

**JOHN A. DEEP,**

                              Defendant.
_____

| | |
|---|---|
| **APPEARANCES** | **OF COUNSEL** |
| **DREYER BOYAJIAN** <br> 75 Columbia Street <br> Albany, New York 12210 <br> *Attorneys for Plaintiffs* | WILLIAM J. DREYER, ESQ. <br> CRAIG M. CRIST, ESQ. |
| **CADWALADER, WICKERSHAM &** <br> **TAFT LLP** <br> One World Financial Center <br> New York, New York 10281 <br> *Attorneys for Plaintiffs* | GREGORY A. MARKEL, ESQ. |
| **SCHMEISER, OLSEN &** <br> **WATTS** <br> 22 Century Hill Drive, Suite 302 <br> Latham, New York 12110 <br> *Attorneys for Defendant* | ARLEN L. OLSEN, ESQ. |

**SCULLIN, Senior Judge**

---

[1] This consolidated action is comprised of the following cases: (1) Mr. Deep's action against XAC, LLC f/k/a Amici LLC, Xerox Corporation, and iDeal Applications, Inc., 1:07-CV-496 (member case); and (2) XAC LLC's and Xerox Corporation's action against Mr. Deep, 1:07-CV-135 (lead case). For purposes of clarity, the Court will refer to XAC, LLC, Xerox Corporation and iDeal Applications, Inc. as Plaintiffs and Mr. Deep as Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court are the following motions: (1) Plaintiffs' motion for summary judgment; (2) Defendant's motion for relief from Plaintiffs' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure; and (3) Defendant's motion to strike certain portions of and the exhibits attached to the Declarations of Plaintiffs' counsel, William Dreyer, filed on October 15, 2007, and June 16, 2009.

The Court heard oral argument in support of, and in opposition to, these motions. At the conclusion of the argument, the Court reserved decision on Plaintiffs' motion for summary judgment, denied Defendant's Rule 56(f) motion, and denied Defendant's motion to strike as frivolous. In addition, the Court directed Defendant's attorney, Arlen Olsen, to show cause why the Court should not sanction him for filing a frivolous motion. The following constitutes the Court's decision regarding the pending summary judgment motion.

**II. BACKGROUND**

In the action that he filed against XAC, Xerox, and iDeal Applications, Mr. Deep asserted four causes of action: (1) copyright infringement of the "Protected Software" embodied in his copyright registration no. Txul-291-908; (2) misappropriation of trade secrets embodied in software contained on the server drive that XAC converted and moved from the 8th floor to the 6th floor; (3) conversion of the same server drive; and (4) unfair competition arising from unauthorized use of the software contained on the server drive and the Protected Software. *See*

*generally* Complaint in Case No. 1:07-CV-496.

Plaintiffs move for summary judgment with respect to all of these causes of action on the grounds that (1) the Copyright Act preempts all of Mr. Deep's state-law claims, (2) Mr. Deep's state-law claims are time-barred, and (3) Mr. Deep does not have a copyright in the Protected Software. The Court will address each of these arguments in turn.

### III. DISCUSSION

**A.     Preemption**

Section 301(a) of the Copyright Act expressly preempts

> [a]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . .

17 U.S.C. § 301(a).

However, § 301(b) limits the displacement of state law by providing, in pertinent part, that

> [n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . .

17 U.S.C. § 301(b)(3).

In turn, § 106 affords the copyright owner the exclusive right to (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5)

display the work publicly. *See* 17 U.S.C. § 106(1)-(5).

Thus, § 301 preempts only those state-law rights that "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)).  However, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.'" *Id.* (quoting 1 Nimmer § 1.01[B], at 1-14-15) (other citation omitted).

Furthermore, "[a] state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Id.* (quotation and other citation omitted).  "To determine whether a claim meets this standard, [the court] must determine 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Id.* (quotation omitted).  "An action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature . . . .'" *Id.* at 717 (quotation omitted).

Applying the extra-element test, the Second Circuit has held that "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." *Id.* (citations omitted).  However, "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets" can satisfy the extra-element test. *Id.* (citation omitted).

Furthermore, "[t]rade secret protection . . . remains a 'uniquely valuable' weapon in the defensive arsenal of computer programmers . . . because trade secret doctrine protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law . . . ." *Id.* (citations omitted).  In addition, "[t]he legislative history of section 301 states that '[t]he evolving common law rights of . . . trade secrets . . . would remain unaffected as long as the causes of action contain elements, such as . . . a breach of trust or confidentiality, that are different in kind from copyright infringement.'"  *Id.* (quoting House Report, at 5748).

"Trade secret claims often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material." *Id.* (citations omitted).  "The defendant's breach of duty is the gravamen of such trade secret claims, and supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying." *Id.* (citations omitted).

With respect to his misappropriation of trade secrets claim, Mr. Deep alleges that he "has developed through his expertise and knowledge, and by experimentation, planning, and strategy, a number of trade secrets relating to his operation of document management systems . . . [and that he] has taken and continues to maintain reasonable efforts to maintain the secrecy of his trade secrets." *See* Complaint in Case No. 1:07-CV-496 at ¶ 59.  He also asserts that "[s]ome of the . . . trade secrets are electronically stored on a Server Drive that has been available only on an as-needed basis to [his] system administrator." *See id.* at ¶ 60.  Furthermore, he contends that "Amici and iDeal have access to [his] trade secrets through their taking of the Protected Software and Server Drive from [his] locked office . . . and moving it to their office . . . or through other means, and through their use of the Protected Software and Server Drive to install the . . . highly

interactive website on the domain of amicillc.com." *See id.* at ¶ 62. Finally, he claims that "Xerox Corp. has access to the . . . trade secrets through its unauthorized acquisition and possession, through purchase or otherwise, of the Protected Software and Server Drive, and through its use of the Protected Software and Server Drive to install the . . . highly interactive website on the domain of amicillc.com and xerox.com." *See id.* at ¶ 63.

With respect to his unfair competition claim, Mr. Deep asserts that "[t]he . . acts of [XAC, Xerox, and iDeal] constitute unfair competition and unjust enrichment in their unauthorized use of the . . . trade secrets and confidential proprietary information through the appropriation of the Server Drive and the Protected Software, which has enhanced and benefited [sic] [their] business activities to [his] detriment and injury." *See id.* at ¶ 70. Furthermore, Mr. Deep alleges that XAC, Xerox, and iDeal "have embarked upon a deliberate scheme to acquire and have acquired the means and ability to compete with [him] either solely or in collaboration with others through the acquisition of the Protected Software and Server Drive and the use of the . . . highly interactive website on the domain of amicillc.com and xerox.com." *See id.* at ¶ 71.

In opposition to Plaintiffs' motion for summary judgment, Mr. Deep, for the first time, argues that his unfair competition and trade secret claims are grounded on Plaintiffs' breach of duty of trust or confidence to him "because [their] director . . . directed [his] employee Mr. Kear to enter [Mr. Deep's] locked office and take the Protected Software and Server Drive without [his] knowledge or consent." *See* Dkt. No. 44, Affidavit of John A. Deep dated November 7, 2007, at ¶ 11. Furthermore, Mr. Deep contends that Plaintiffs' "breach of duty is the gravamen of [his] trade secret claims, and supplies the extra element that qualitatively distinguishes [his] trade secret causes of action from claims for copyright infringement that are based solely upon

copying." *See id.*

Although Mr. Deep argues in his memorandum of law that his unfair competition and trade secret claims are based on Plaintiffs' breach of duty of trust or confidence to him, his complaint never mentions any such duties with respect to these claims. Furthermore, he does not explain on what basis Plaintiffs owe him this duty of trust or confidence. Absent any allegation in his complaint that even plausibly suggests that an "extra element" exists, let alone any proof of the same, the Court concludes that the Copyright Act preempts Mr. Deep's unfair competition and trade secret claims because those claims are based solely on the alleged copying of Mr. Deep's protected expression. Therefore, the Court grants Plaintiffs' motion for summary judgment with respect to these claims.

B.   **Statute of limitations for conversion claim**

The parties do not dispute that, under New York law, the statute of limitations for a conversion claim is three years. *See Hwang v. Dunkin Donuts Inc.*, 840 F. Supp. 193, 196 (N.D.N.Y.), *aff'd*, 28 F.3d 103 (2d Cir. 1994) (citations omitted). The parties do, however, dispute when Mr. Deep's conversion claim accrued. Plaintiffs argue that this claim accrued in June or July 2002, but certainly no later than November 2003. They base their argument on the following evidence: (1), in his affidavit, which Mr. Deep attached to his complaint, Mr. Kear stated that the implementation of the document management system "under the technical direction of John Deep' began "in June or July 2002," *see* Plaintiffs' Memorandum of Law at 18 (citing Kear unsworn Affidavit of October 24, 2006 at ¶¶ 3, 9-11, attached as Exhibit A to the Complaint herein); and (2) Mr. Kear's claim that he witnessed the alleged conversion and

accompanying software while he was employed at Amici and, since Mr. Kear left that employment in November 2003, the alleged conversion had to have occurred no later than November 2003, *see id.* at 18-19.

In response, Mr. Deep argues that "[i]t is not yet possible to know without discovery when exactly the conversion and misappropriation of the Protected Software and Server Drive occurred, though newspaper accounts provide [a] good reason to believe that the misappropriation of the assets that [his] lawyers held in trust for [him] occurred sometime after September 2005." *See* Dkt. No. 44, Affidavit of John A. Deep dated November 7, 2007, at ¶ 6. Furthermore, he asserts that all of the statements that he made in bankruptcy proceedings and in various depositions about the Aimster Filesharing Software were legal conclusions made on information and belief about which he lacked personal knowledge as a non-attorney. *See id.* at ¶ 7.

Mr. Deep does not challenge Mr. Kear's statements that he witnessed the conversion while he was an employee of Amici and that he left his employment with Amici in November 2003. Nonetheless, Mr. Deep states that, based on some newspaper articles, he believes that the conversion occurred after September 2005. Not only does Mr. Deep not explain what information in those newspaper accounts leads him to this conclusion, he does not even attempt to explain how that information would contradict Mr. Kear's statements or change the fact that, if Mr. Kear left Amici's employment in November 2003, **after** he witnessed the conversion, the claim must have accrued no later than November 2003. Therefore, because Mr. Deep has not come forward with any evidence to rebut Plaintiffs' argument that, at the very latest the conversion claim accrued in November 2003, the Court grants Plaintiffs' motion for summary

judgment with respect to Mr. Deep's conversion claim.

### C.  Copyright infringement

Plaintiffs contend that Mr. Deep does not have standing to bring a claim for copyright infringement because he does not own the "Protected Software." In support of this contention, Plaintiffs state that, although Mr. Deep claims that he is the author of the copyrighted "Protected Software," as an "employer-for-hire of Kris Beevers," Mr. Beevers' W-2 forms show that he developed the Protected Software while he was an employee of either BuddyUSA or Pi2 between January and March 2001.

Furthermore, in his affidavit, Mr. Beevers stated that he wrote the Protected Software in the office of BuddyUSA and that either BuddyUSA or Pi2 paid him for his work. Mr. Beevers also asserted that he never wrote or edited computer source code for BuddyUSA, Pi2 or Mr. Deep personally after August 2001, the date on which he left the employ of BuddyUSA and Pi2. *See* Dkt. No. 42-11, Plaintiffs' Memorandum of Law, at 10 (citing Beevers Decl. at ¶ 10). Furthermore, Mr. Beevers stated that, as an employee of BuddyUSA, he signed an employment agreement, in which he agreed that all of the work that he created while in the employ of BuddyUSA in any manner tangentially related to that software was the property of BuddyUSA. *See id.* (citing Exhibit E to Second Dreyer Decl.).[2]

Finally, Plaintiffs argue that Mr. Beevers' declaration is entirely consistent with numerous statements and filings that Mr. Deep has submitted in several different courts. *See id.* As an

---

[2] "Second Dreyer Decl." refers to the Declaration of William J. Dreyer dated October 15, 2007.

example, Plaintiffs note that BuddyUSA and AbovePeer, Inc. filed for bankruptcy in March 2002; and, in May 2002, Schedules of Assets and Liabilities and Statements of Financial Affairs, which Mr. Deep signed and swore to their accuracy, were filed for both of these companies in their respective bankruptcy proceedings. *See id.* at 10-11. Plaintiffs note that "[t]he Schedule of Assets and Liabilities of BuddyUSA lists as BuddyUSA's property 'software and source codes for file sharing, non-enterprise applications commonly referred to as "Madster, formerly known as Aimster".'" *See id.* at 11. In addition, "[t]he Schedule of Assets and Liabilities for AbovePeer lists, under the category of 'Licenses, Franchises and Other General Intangibles,' a 'license *from BuddyUSA* for "Madster f/k/a Aimster," non-enterprise applications[.]'" *See id.* (citing Exhibits F and G to Second Dreyer Decl.). Furthermore, the Statements of Financial Affairs for both of these companies require the debtors to list any property within the debtor's possession that is "held for another." *See id.* Neither BuddyUSA's nor AbovePeer's filings disclose any intellectual property held for Mr. Deep or any entities that Mr. Deep owned. *See id.* "Moreover, neither identifies [Mr.] Deep as a creditor or supplier of any intellectual properties to the rights of the debtor corporations." *See id.* (citing Exhibits H and I to Second Dreyer Decl.).

In response to Plaintiffs' arguments, Mr. Deep asserts that he and Mr. Beevers agreed orally and in writing that Mr. Deep employed Mr. Beevers personally to write source code for Protected Aimster.com Website-Server Software, which was separate and distinct from the Aimster Filesharing Software, and in return, Mr. Deep gave Mr. Beevers consideration. Mr. Deep also contends that he and Mr. Beevers agreed that Mr. Deep personally would copyright any work that Mr. Beevers performed on the Protected Aimster.com Website-Server Software.

Furthermore, Mr. Deep claims that he has personal knowledge that neither BuddyUSA

-10-

nor Pi2 Products employed Mr. Beevers to develop the Protected Aimster.com Website-Server Software and that Mr. Deep owned and registered the website software and that it was his sole property.  *See* Dkt. No. 44, Affidavit of John A. Deep dated November 7, 2007, at ¶ 9.  In addition, Mr. Deep states that Mr. Beevers never entered into any confidentiality agreement with BuddyUSA whose scope of employment included his work on the Protected Aimster.com Website-Server Software.  *See id.*

In response to these arguments, Plaintiffs assert that the Copyright Registration that Mr. Deep filed with the United States Copyright Office for what he called the "Aimster User Database" states that Kris Beevers created the Aimster User Database as a work for hire for Mr. Deep.  *See* Dkt. No. 45, Plaintiffs' Reply Memorandum of Law, at 1.  "That same day, [Mr.] Deep wrote to Xerox alleging that it was violating the copyright."  *See id.*  "The Notice of Claimed Copyright Infringement listed the computer code and code expressions that were purportedly copied."  *See id.*  Mr. Beevers examined the "Aimster User Database computer code and list of expressions and swears that he created the code in 2001 for BuddyUSA or Pi2, Inc. and not for [Mr.] Deep."  *See id.* at 2.  Plaintiffs further contend that Mr. Deep's argument that there is some other unidentified-but-related software that is really the subject of the copyright is a recent fabrication to try to avoid summary judgment and has no evidentiary basis.  *See id.* at 2-3.

In addition, in response to Mr. Deep's submission of the Assignment of Claims, whereby Mr. Beevers assigned his bankruptcy court claim for past wages from BuddyUSA to Mr. Deep, Plaintiffs assert that this Assignment of Claims does not support Mr. Deep's position that "'any work [Beevers] performed on the Protected Aimster.com Website – Server Software would be copyrighted by [Mr. Deep] personally.'"  *See id.* at 4 (quoting Deep Answering Affidavit at ¶ 3).

-11-

Plaintiffs contend that this Assignment of Claims, which was executed on September 19, 2006, long after the creation of the Protected Software,

> attaches a series of documents that confirm [Mr.] Beevers's employment status with BuddyUSA, including [Mr.] Beevers's claim for unpaid wages in the BuddyUSA bankruptcy; [Mr.] Beevers's letter of July 11, 2003, to the Bankruptcy Court asserting his claim for past due compensation from BuddyUSA; his employment agreement with BuddyUSA signed by John Deep as President; and [Mr. Beevers'] W-2s showing that [Mr.] Beevers was paid compensation by BuddyUSA and Pi2 during the relevant time period.

*See id.*

Plaintiffs note that "these are the same documents that they submitted to prove that [Mr.] Beevers worked for BuddyUSA and Pi2, Inc. in 2001[.]" *See id.*

Plaintiffs further assert that Mr. Deep was obviously the one who drafted the Assignment of Claims and that the Assignment of Claims contains "self-serving statements in the whereas clauses that provide that 'Employee was previously employed by John A. Deep to develop source code for Aimster, copyrighted by John A. Deep' and further recites that 'BuddyUSA previously paid Employee's salary on behalf of John A. Deep.'" *See id.* However, Plaintiffs contend that the Assignment of Claims "is clearly, on its face, not an agreement by [Mr.] Deep and [Mr.] Beevers that all of [Mr.] Beevers's work would be copyrighted by [Mr.] Deep. Moreover, the self-serving recitals do not rebut the undisputed fact that [Mr.] Beevers was paid by, and had an employment contract with, BuddyUSA during the period of time that he produced the software." *See id.*

Finally, in response to Mr. Deep's statement that his previous sworn statements regarding the fact that BuddyUSA owned the software were "legal conclusions" that his attorneys required him to state, Plaintiffs assert that these statements "are not legal conclusions but statements of

fact [about which Mr.] Deep, as President of BuddyUSA, would have had personal knowledge[.]" *See id.* at 5. Plaintiffs also contend that "his attempt to recant his statements as forced on him by his former attorneys" is both legally indefensible and completely lacking in any evidentiary support and devoid of any factual particulars of any kind. *See id.* Plaintiffs note that, by his "lawyers," Mr. Deep is presumably referring to the lawyers of Boies, Schiller & Flexner, LLP ("BSF"), whom he has sued in state court. *See id.* However, these lawyers

> did not represent [Mr.] Deep, AbovePeer or BuddyUSA when [Mr.] Deep filed the disclosure statement on behalf of AbovePeer and BuddyUSA on February 12, 2003 (Exhibit L to Second Dreyer Decl.), in which [Mr.] Deep identified the Aimster software as belonging to AbovePeer and BuddyUSA; when [Mr.] Deep was examined under oath at the Rule 2004 hearing in December, 2002 (Exhibit O [to] Second Dreyer Decl. at 71-72) in which [Mr.] Deep unequivocally admitted that "defendant BuddyUSA developed the Aimster software and defendant AbovePeer operates it" or when a hearing was held in US Bankruptcy Court in June of 2003 (Exhibit P to the Second Dreyer Decl. at 24-25, 34, 85) when [Mr.] Deep again reaffirmed, under oath, that BuddyUSA owned the Aimster software.

*See id.* at 5-6.

"To prevail in a copyright infringement action, a plaintiff must show both ownership of the copyright and copying by the defendant." *Arthur A. Kaplan Co., Inc. v. Panaria Int'l, Inc.*, No. 96 CIV. 7973, 1998 WL 603225, *2 (S.D.N.Y. Sept. 11, 1998) (citation omitted). Moreover, "[u]nder the Copyright Act, the 'legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it,' 17 U.S.C. § 501(b), provided that the owner complies with the Act's recordation and registration requirements. 17 U.S.C. § 411." *Id.*

The Copyright Act also allows for the transfer of copyright ownership, which it defines

-13-

as "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright[.]"  17 U.S.C. § 101.  However, any such transfer of copyright ownership is not valid "other than by operation of law . . . unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed."  17 U.S.C. § 204(a).

Mr. Deep claims ownership of the copyright to the Protected Software under three theories: (1) as employer for hire of Kris Beevers, (2) under oral agreements between him and the developers, and (3), for the first time in opposition to Plaintiffs' motion, under a Master Agreement, signed March 20, 2009, pursuant to which BuddyUSA purportedly assigned its rights in the copyright to the Protected Software to him.

In an effort to create a genuine issue of material fact regarding the issue of whether he owns the copyrighted software, Mr. Deep denies each of the statements in Plaintiffs' Statement of Material Facts.  For example, the first statement in Plaintiffs' Statement of Material Facts states as follows:

> The computer software for which Deep claims a copyright, namely the so called "Aimster User Database Routines", registered with the United States Copyright Office as Registration No. Txul-291-908, was created by Kris Beevers between January and March of 2001 while he was employed by either BuddyUSA, Inc. ("Buddy USA") or Pi2 Products, Inc. ("Pi2").  Declaration of Kris Beevers, dated September 11, 2007 (hereinafter "Beevers Decl." at ¶ 6 to 8 and Ex. A hereto, attached as Ex. A to the Declaration of William J. Dreyer dated October 15, 2007 (hereinafter "Second Dreyer Decl.").

*See* Plaintiffs' Statement of Material Facts at ¶ 1.

Mr. Deep's response to this statement is as follows:

> Denied. The computer software registered with the United States Copyright Office as Registration No. Txul-291-908 (the "Protected Software") was created by me as the employer-for-hire of Kris Beevers, Exhibit C attached to Declaration of John A. Deep dated February 26, 2007 ("Deep Declaration"), (docket No. 7 of docket 496), and is owned by me personally and exclusively and has never been transferred, licensed or conveyed to any entity including Amici LLC (other than Mintech LLC), but is my sole property. Deep Declaration ¶ 57 et seq.

*See* Deep's Affidavit in Opposition to Plaintiffs' Motion for Summary Judgment at ¶ 1.

Although at first glance it appears that Mr. Deep's response is sufficient to create an issue of fact, upon closer examination it becomes clear that, when viewed in light of other facts in the record, Mr. Deep's statement fails to withstand scrutiny. First, although the Copyright Registration for Txul-291-908 that Mr. Deep completed states the year in which the copyrighted work was completed and that Mr. Deep was the author as an employer for hire of Kris Beevers, *see* Mr. Deep's Complaint at Exhibit "C," Mr. Beevers' W-2 forms demonstrate that he was employed by BuddyUSA and Pi2 during that time period. Moreover, there is an employment agreement dated August 25, 2000, that Mr. Beevers signed and that Mr. Deep signed as President of BuddyUSA, Inc., which is further proof that Mr. Beevers was an employee of BuddyUSA and not of Mr. Deep at the relevant time.

In addition, Mr. Deep's papers in opposition to Plaintiffs' motion are at best an attempt at obfuscation. For example, he states that he "ha[s] personal knowledge that Mr. Beevers was not employed by BuddyUSA or Pi2 Products LLC to develop the Protected Aimster.com Website-Server Software, and that the website software was registered and [sic] by me and was my sole property. A true and correct copy of the registration for Madster.com is attached at Exhibit C . . . ." *See* Deep's Affidavit in Opposition to Plaintiffs' Motion for Summary Judgment at ¶ 9(b).

-15-

Although there may be some truth in this statement, the Court notes that Mr. Deep is very careful not to say that Mr. Beevers was not employed by BuddyUSA or Pi2 at the relevant time, only that he was not employed by those entities to develop the copyrighted product.

Likewise, Mr. Deep states that his

> former lawyers drafted and improperly attempted to induce Mr. Beevers to sign a certain declaration, a true and correct copy of which is attached hereto as Exhibit D (the "Unsigned Declaration"), even though [his] former lawyers knew or should have known that the declaration they drafted was false, that the statements were clearly legal conclusions that Mr. Beevers as a non-attorney could not reasonably be expected to testify to without benefit of counsel, and that Mr. Beevers had not retained counsel.
>
> d. Indeed, Mr. Beevers informed [Mr. Deep] that he refused to testify to the statements made in the declaration, including the very statements that [Plaintiffs] seek to prove, namely:
>
> i. That the Protected Software was "created by [Mr. Beevers]," Unsigned Declaration ¶ 8;
>
> ii. That John Deep was the President of BuddyUSA in 2000 and 2001 when [Mr. Beevers] was employed by the company, Unsigned Declaration ¶ 10;
>
> iii. At no time have I ever worked directly for John Deep personally, Unsigned Declaration ¶ 11;
>
> iv. I never wrote or created computer source code for John Deep personally, Unsigned Declaration ¶ 13.

*See id.* at ¶ 9.

Setting aside for a moment that an unsigned declaration is not admissible evidence, even if Mr. Beevers told Mr. Deep that he had refused to sign this Unsigned Declaration – which the Court doubts – Mr. Beevers did sign a declaration dated September 11, 2007, in which he stated that, based solely on his personal recollections, from June 2000 to August 2001, he was paid by

Buddy USA and Pi2 to write source code for a software product called "Aimster." *See* Beevers Declaration at ¶ 1. He also stated that he reviewed the Notice of Claimed Copyright Infringement and that he wrote the computer source code identified therein between January and March 2001. *See id.* at ¶ 6. In addition, he stated that it was his recollection that he was paid for his work on the Aimster User Database Routines by either BuddyUSA or Pi2 Products and that his W-2 forms are attached and, finally, that after August 2001, he never wrote or edited computer source code for BuddyUSA, Pi2 Products or John Deep personally. *See id.* at ¶¶ 8, 10.

Furthermore, for Mr. Deep to take issue with the statement that he was President of BuddyUSA in 2000 and 2001 is ludicrous given the fact that he signed Mr. Beevers' employment agreement as President of BuddyUSA on August 25, 2000.

Other than his own unsupported statement, Mr. Deep has not come forward with any evidence to contradict or even call into question the validity of the documentary evidence in the record, in particular, the employment agreement that he signed as President of BuddyUSA with Mr. Beevers, which clearly indicates that, during the time in question, Mr. Beevers was an employee of BuddyUSA and that he developed the software in question while he was so employed. Therefore, the Court concludes that Mr. Deep cannot rely on his claim that he was the author of the copyrighted work as an employer for hire of Kris Beevers to demonstrate that he owns the copyrighted software.

As an alternative basis for his claim of ownership, Mr. Deep relies on a Master Agreement, dated March 20, 2009, which purports to show that, although the software was created for BuddyUSA, BuddyUSA subsequently assigned its right to the software to Mr. Deep. As Plaintiffs point out this Master Agreement suffers from some serious problems, the most

significant of which is that BuddyUSA filed for bankruptcy protection in March 2002, and that, at the time it signed the Master Agreement, the bankruptcy matter had not been concluded. As such, BuddyUSA could not have transferred any of its assets without the approval of the Trustee or the Bankruptcy Court, and there is no evidence that BuddyUSA ever sought any such approval or that such approval was granted.

Although he does not dispute that BuddyUSA's bankruptcy matter was extant at the time that it entered into the Master Agreement, Mr. Deep, nonetheless, argues that, because the "Master Agreement clearly states that the transfer of all ownership rights, including copyright, from BuddyUSA to [Mr. Deep] took place at the moment of [Mr. Deep's] creation of the software architecture . . . [and that] it is well-settled that a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio, i.e., at the time of the earlier oral argument[,]" "BuddyUSA's filing of bankruptcy cannot possibly affect BuddyUSA's oral agreement to transfer of copyright ab initio years earlier to [Mr. Deep]." *See* Deep's Reply in further Support of Motion to Strike at 6 (citation omitted).

There is no dispute that, under certain circumstances, "a writing, even if signed after litigation commenced, can serve to satisfy the requirements of § 204(a)[,]" the purpose of which "is to protect copyright holders from persons mistakenly or fraudulently claiming ownership of a copyright[.]" *Arthur A. Kaplan Co.*, 1998 WL 603225, at *2 (citations omitted). This does not mean, however, that a party that lacks the authority to sign such a writing in an effort to transfer its ownership of a copyright to another party can do so even if the written agreement purports to do nothing more than to memorialize an earlier oral agreement.

Mr. Deep does not dispute that BuddyUSA has been in bankruptcy since 1992; nor does

-18-

he dispute that BuddyUSA needed the approval of either the Trustee or the Bankruptcy Court before it could assign or transfer its assets, including any ownership interest in the copyright to the Protected Software, to another party.  Nonetheless he argues that, because BuddyUSA entered into the oral agreement to transfer its interest in the copyrighted software to him before BuddyUSA filed for bankruptcy, its signing of the Master Agreement while its bankruptcy was ongoing constituted a valid transfer.

     Clearly, under Second Circuit precedent, an oral agreement that is subsequently memorialized in writing can cure a standing defect.  However, the party purporting to transfer its rights under a written agreement cannot effect such a transfer unless it has the authority to do so.  Mr. Deep has not come forward with any evidence to show that, at the time that BuddyUSA signed the Master Agreement, it had the requisite authority.  Certainly, there is no evidence that either the Trustee or the Bankruptcy Court approved such a transfer and without that approval, the transfer is invalid; a point that Mr. Deep does not dispute.  Without evidence that BuddyUSA validly transferred its ownership of the copyright in the Protected Software to Mr. Deep, the only reasonable conclusion that the Court can draw, based on the undisputed facts in the record, is that Mr. Deep is not the owner of the copyright in the Protected Software and, therefore, he does not have standing to bring a claim for copyright infringement.

## IV. CONCLUSION

Accordingly, having reviewed the entire file in this case, the parties' submissions and oral arguments, and the relevant law, and for the reasons stated at the conclusion of oral argument and in this Memorandum-Decision and Order, the Court hereby

**ORDERS** that Mr. Deep's motion for relief from Plaintiffs' motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

**ORDERS** that Mr. Deep's motion to strike is **DENIED as frivolous**; and the Court further

**ORDERS** that XAC, LLC, Xerox Corporation, and iDeal Applications, LLC's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of XAC, LLC, Xerox Corporation, and iDeal Applications, LLC and close this consolidated action.

**IT IS SO ORDERED.**

Dated: October 10, 2011
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge